Good morning. May it please the court, my name is Tim Green and I'm the attorney for Norma Rodriguez. She's the appellate in this case. This is a national origin discrimination and retaliation claim by Ms. Rodriguez against her former employer, Pierce County. Before you start your argument, let me make a couple of comments. Number one, although there's 20 minutes on the clock, I will caution you that because we're reviewing a trial judge's evidentiary rulings, we don't need to go through an extensive argument on each point, so try and get your remarks to the point. Secondly, with respect to both counsel, the Ninth Circuit has rules about how you prepare excerpts of record, and you have made at least one chamber's set of law clerks who had to go through both of your papers and spend an extraordinary amount of time tracking down citations. Some were not cited to the ER, but instead to the original documents. The purpose of the ER, and as our rule says, is to assemble the documents necessary for the court to make a decision. So in some cases, and this is a violation of different proportions on either side, in some cases where the record was supplied and put in an ER, as I say, the brief citations were not to the ER, so then we have to go track down and find where they are. Secondly, there were allegations or statements made, I believe, in the county's brief where there was information put in, but we didn't get the documentation to support it. So I just caution you that when you are doing your briefing, both of you, and preparing an ER, the excerpts of record is critical. We look at what you cite in your briefs, and if you say something is A and it's supported by B, we're going to look to see what B says. So if we can't find it easily or can't find it at all, then it's a difficulty. So I say that as constructive criticism to both sides. Okay? So you may proceed. Thank you, Your Honor. Ms. Rodriguez is a native of Mexico. She's a naturalized U.S. citizen. She had worked for Pierce County for nine years as the Affirmative Action and then EEO, Equal Employment Opportunity Officer, until Betsy Sawyers became the Human Resources Director. And at that time, seven months into Ms. Sawyers' tenure as Human Resources Director, she wrote a work expectations memo to Ms. Rodriguez. Ms. Rodriguez provided some concerns and constructive criticism to that. There was other exchange back and forth between the two. And then Ms. Sawyers referred the matter to the Chief of Staff for the County Executive, Lyle Quazim, who ordered an internal investigation. After that, then, at that point, then, Ms. Rodriguez' reserved work was being taken away from her. She was being excluded from meetings. She also was advised by Ms. Sawyers that Ms. Sawyers was keeping a journal on her activities, how often she went to the bathroom, how much time she was spending at the copier. She then filed a human rights complaint in September. Why don't we get to the objections you have to how the trial court allowed you to present your case. I think that's... First of all, I... Isn't that what you're concerned about? Right. Yes, Your Honor. Okay, my first factual question is, is the Morris report, that is the report that was prepared as a result of the investigation. That's correct. Was the Morris report ever introduced into evidence? Yes, it was. Into evidence. It was introduced into evidence through Denise Greer, who was the attorney. I see in the record it was marked for identification and shown to the witness. Yeah, I believe it was. Was it ever introduced and moved into evidence? I believe it was. That's not what the site that you gave it said. All I've got is questioning by county counsel that asks if the report was prepared and whether it rejected the claims. And the answer was, in effect, yes, we rejected all the claims. It's clear on the record that it was shown only to the witness. Okay. Did you try the case? No, I didn't. Well, see, it's important. That's why we look at the ER. There's a difference in trying a case between marking something for identification and not showing it to the jury. And moving it into evidence so that the jury takes it into the jury room and can look at it as evidence in the case. So all the jury knows about the Morris report is that it exists and that it didn't sustain any of the claims. Well, does that affect your argument with respect to whether or not you needed continuance to refute the 400 pages or to prepare or get a witness to rebut Kathy Morris? I mean, she wasn't even offered as a witness, was she? No, she wasn't. But the fact remains is that there were 400 pages of background documentation in interviews with people that worked for the county. That information may have been very useful. May have been. You had it for how many? You had that information, as I understand it, for what, about a month before you moved for the continuance? That's right. He had the information for a month. He didn't have time to sift through it. He had to prepare a deposition for a new witness that had just been identified by the county, and that was Morris herself. Because Morris was excluded as a witness prior to that because the county was invoking privilege work product. And then once the county found out that Ms. Rodriguez had a copy of the Morris report, then the county, as they explained at the pretrial, indicated that they would, at that point, they decided to introduce Ms. Morris as a witness. So not only did Ms. Rodriguez's trial counsel have to sift through this material, a month before trial, this is three months after the discovery cutoff, he also had to prepare for a deposition to find out what Morris knew. So it was Morris he was taking the deposition of? Yes. Now, he had the Morris report right away. He had the report. He had the 24 pages where she summarized 400 pages of interviews. Discovery had closed. Why was her deposition being noticed so late in the meeting? I think the parties agreed that they would. But was that triggered by the disclosure of the 400 pages of documents or by the report? I think it was both. The fact that the county had formally agreed that they were going to now put the report into play, so to speak, that they were not going to, they argued that the document should not be excluded as evidence, and they indicated they wanted to introduce it as evidence. In fact, initially, they indicated that they were going to have Ms. Morris testify, and then they decided that she wouldn't be testifying. That's important in relation to the continuance motion. The continuance motion was what, about shortly before trial, wasn't it? It was actually raised at the pretrial conference. That was about a week before the actual trial date? About a week, five days before. Okay, so now the court is looking at this trial being set up,  and so just so we can all understand the posture of what the continuance request is, is he's asking for what? That is, counsel for Ms. Rodriguez. What's he asking for? He's asking for a continuance in order that he may, because Morris was going to be introduced as a witness. When, in relation to that pretrial conference and the request, did he know that Morris was going to be a witness? I believe he knew 30 days beforehand because that's when. Okay, and had he made any effort within those 30 days to notice her deposition? Yes, he did. Okay, so that deposition was pending at the time of the pretrial conference. The deposition had been held. The deposition had been noted, and then it was held, I believe it was held the Friday before the pretrial conference. And did he get the 400 pages before that deposition? Yes, he did. Okay, so he had the report and the 400 pages, and he took her deposition. That's correct. Okay, so the continuance was then to do what? Continuance was so that he could get a witness. Now that she was identified as a witness, he wanted a continuance to get a rebuttal expert witness to testify about the materials in the report. Okay, now as it turns out, the county did not present Ms. Morris, is that correct? That's correct. And they didn't put in any of the documents?  So what's the harm? The harm is that the county had Ms. Greer, Denise Greer, testify that the report had shown that there was no wrongdoing by the county. That's true, but didn't he raise the Morris report himself, Ms. Rodriguez's counsel? He did. He raised it first, didn't he? He did. Okay, and then when the county has got Ms. Greer on the stand, she's asked about the Morris report. And I don't have the exact quote, but I paraphrased it before. I noted that there was no objection to her answer, no motion to strike, no objection on hearsay, nothing. So what do we do with that? And I thought about that. Hindsight is 20-20. No, it's tough when you're trying a case to think of everything, isn't it? Right. It should have been done, except for one thing. The attorney for the county at the time had indicated at the pretrial conference specifically, Ms. Morris is going to testify. Well, I understand. I'm accepting that. I understand why that might be arguable, but what I'm trying to understand is what's the harm then? Why should it affect your ---- Is that without the opportunity to, A, cross-examine Ms. Morris, but granted ---- She wasn't called. She could have been called. But you could have called her. Right. Right. He took her deposition. He knew what she was going to say. I guess he decided he didn't want to call her. He just wanted to talk about the report, or he thought she was going to be called. But in any event, she wasn't. So you didn't get a rebuttal witness, but you didn't need a rebuttal witness. How could you put a witness on to say what? Well, the thing is, if the continuance had been granted, we step back and look at the ---- if the continuance had been granted, given the fact that 400 pages of discovery had suddenly been provided to Ms. Rodriguez, if a continuance had been granted, perhaps there would have been ---- I mean, I think given the number of people that were interviewed, there would have been a substantial amount of material that a witness for the county ---- I mean, a witness for Ms. Rodriguez ---- Let me ask this. I appreciate what you're saying, but I'm still trying to understand. My own, you know, preparing for trials, gone through all that and done that, and judges are pretty tough on managing their trial dates, and they don't let you just get continuance as well. So I'm showing that might be. What was the proffer? He'd had the documents for at least a month by the pretrial conference. He's taken a deposition. Maybe he hadn't had a chance to go through all of them, but what was the proffer to the trial judge as to why those documents were going to show something? Was there anything specific given so that we can get a hook into why your client was prejudiced by any of this? Well, he did offer some ---- My recollection was that he did offer some examples of things that he had read in there. There was a statement by one of the witnesses that Ms. Rodriguez was a special Mexican, for example. And so he said, there's materials here that I think are going to be helpful to my case, and so I need time to sift through the material and to obtain an expert if I need one, given what's in the material. I mean, the unfortunate thing about it is that that's, of course, one reason why discovery cutoffs are months in advance. I understand. I understand that. I know you do. You're running down on time, and I had a couple of other questions that I wanted to ask you about. The witnesses who were being excluded or were excluded because it appeared that they were being offered on the public, a matter of public concern, testimony. My understanding that the court dismissed the First Amendment claim based on the Supreme Court's wisdom to reverse a case on which I was on the panel, Garcetti, or Ceballos versus Garcetti. So even though he may have had a great theory for a while under the Ninth Circuit rule, that got knocked out by the Supreme Court. So those witnesses wouldn't have been relevant anymore, would they? There was no appeal. You haven't taken an appeal from the dismissal of the First Amendment claim. Right, and that's correct. They would have still been relevant because they would have shown that the motive, part of the motive for retaliation by Ms. Sawyers would have been the fact that my client had hit the nail on the head. She said, look, you're diluting the function of the EEO. And then you would have said there's a pattern. She's done it before. The motive is reasonable, or the motive would be shown for retaliatory action, plus the fact it would have shown that the protected activity, my client's own actions, were reasonable in that she had a reasonable belief that there was unlawful discriminatory activity going on in that someone was actually coming in to dismantle. Or one of the things that she was doing was dismantling the integrity of the EEO operation. Okay. I'll ask one more question, then I'll let you reserve the balance of your time. On the jury instruction? Yes. You have a retaliation jury instruction, and there's a discrimination retaliation instruction. Are you challenging both, or just one of those? I'm saying that there's – I'm challenging both. I'm saying that he – that the – The standards are different. That is, in other words – Right. And why didn't the instructions that were given convey that? They quoted the language of our own case law. You mean the ones that were proposed by Mr. Bond? No, the ones that were given by the – well, the ones that were given in the case. I read them, and I'm – That's a good question. They were accepted to by Mr. Bond. He objected to the fact that the jury instructions didn't provide two separate definitions of – Who's Mr. Bond? Oh, I'm sorry. He was the attorney for Mr. Rodriguez. Yeah, well, that's what I'm trying to understand, what his complaint was. What? What is his complaint? Oh. What are you appealing from on that one? I'm having a little trouble tracking it because the – The most important issue that I've got is that I think Mr. Bond's not so much on the – to be honest with you, I've looked at the instructions he's proposed versus the – and I'm not going to take anything away from my brief, but I don't – I've looked at it, and I'm not sure exactly if there's a great deal of prejudice. I don't think it's our strongest hand in this case. Okay. Why don't you save the rest of your time then for Mr. Bond? Okay, sure. Thank you. All right. May it please the Court, my name is Donna Moss-Moto, and I represent the county in this matter. I want to thank the Court for its pointing out the deficiencies in my supplemental excerpts of the record. Those were my deficiencies alone, and I will learn from this. All right. Thank you. First, with regard to the Morris Report, there were two issues that are being raised with regard to that. The first one is that the trial court erred with regard to the – by denying the plaintiff's motion to exclude the entire – the entire report. And the basis for the plaintiff's motion in this case was, well, they're claiming it's privileged, so they have to choose. If it's privileged, they can't mention it at all. The defendant then did produce the pages of discovery to the plaintiff, and there is some dispute in the record as to when that first occurred. But it's clear that by the time the judge in this case considered the motion that those documents were produced, there was no claim of privilege being made in this case. And so the judge's ruling denying the motion was basically the only ruling that he could have entered. They have the discovery, they're not claiming privilege, therefore, this motion is going to be denied. There's no abuse of discretion with regard to that ruling. Now, there were two judges in this. Judge Leighton started out handling the case. That's correct. And then Judge Burgess. So it was Judge Leighton who addressed the question of the – suppressing the Morris – or dealing with the Morris report, and then the continuance would have been Judge Burgess? Yes. The motion regarding or excluding the entire reference to the Morris report was raised before Judge Leighton about six weeks before trial. And the second motion I was going to talk about, which was the motion for continuance, was raised about one week prior to trial before Judge Burgess. Okay. Thank you. And Judge Burgess did act within his discretion in denying that motion as well. I don't want to interrupt, but I just want to focus here. I asked for the chronology because figuring out what was the status of discovery, disclosure. The county's intent with regard to the report in this Morris at the time of the pretrial conference, is it correct that at that point the county did intend to call or say it intended to call Ms. Morris and attempt to use the report? That is correct. We did. All right. And when did you advise the plaintiff that you weren't going to do that? The trial counsel in this case made a record at one of the proceedings. I believe it was the one before Judge Burgess on the chronology of events. And what she stated was that early on the county did take the position that this information was privileged. We were not going to turn it over in discovery. And then when the plaintiff herself produced the Morris report. I understand that. But when was it that the county decided it wasn't going to proceed to call her as a witness? Decided that it was going to call? Was not. Because his argument is that the county said it was going to call Morris, put the report in through her presumably. And I don't know about the underlying documents. Well, I believe that she was scheduled to be a witness. And then at some point during the trial proceedings themselves, it was decided that they were not going to call her. That's my question. When did the plaintiff get notice that all their concerns pretrial, that they were basing their continuance motion on, had been at least arguably mooted because the county wasn't going to call the witness? I'm not sure when notice was provided to plaintiff's counsel in this case. But it was after trial actually started. I believe that's correct. So we should evaluate the exercise of discretion based on the record before Judge Burgess at the time he ruled on it, which was that Ms. Morris was going to be a witness, presumably a key witness. That is the representation that the county did make to Judge Burgess. That's correct. And what I suspect happened was when the plaintiff presented his first witness, which was Lyle Quazim in this case, and had Mr. Quazim testify extensively to the fact that Mr. Quazim had ordered an investigation, that he had ordered that the investigation be full and fair and complete as far as and take us wherever it would take us, they extracted all this testimony from Mr. Quazim, and the decision was made at some point, well, do we need to call her at all? So that witness was called by Rodriguez? By the plaintiff's counsel. The very first plaintiff's witness was Mr. Quazim. So that's what I suspect. The record doesn't state clearly when the decision was made, but that's what I suspect is the reason why it was decided ultimately that we have the information in the record already before the jury. Why call an additional witness? Okay. The information that was before Judge Burgess was that the plaintiff wanted a continuance. It was one week prior to trial, and that they wanted the time to secure a rebuttal witness for Ms. Morris. There was no indication in the record that the plaintiff had made any efforts to contact anyone or that anyone was in mind or that anyone was being retained or talked to at all. So given the fact that we don't know if any such witness even existed, and we still don't know, in fact, there is no abuse of discretion in this case with regard to Judge Burgess's decision. And there is a claim in this case from the plaintiff that this caused hardship on them, but Judge Burgess himself pointed out in the record that this was the plaintiff could have resolved this earlier by way of bringing a motion before the court to resolve the issues of privilege, to resolve whether how this matter would play out. He did not do so. Instead, what he did was he waited until near the end of the discovery period to raise a motion to exclude, a motion in limiting. And that was probably a strategic decision on his part, a way of dealing with it to ensure that didn't come up at all in trial. Don't discuss it during discovery. Don't raise it before a judge. Just hope it goes away. And it didn't work. And so there was an element of self-created hardship in this case. And the Court correctly pointed out that the ---- I think we have the continuance well in focus. Is there anything you feel you need to address? I could address the two witnesses who were excluded. Why don't you do that? Okay. I was rereading that section on the plaintiff's reasons that he gave Judge Burgess for the ---- for introducing the testimony of these witnesses. And, yes, he did repeatedly say this goes to our First Amendment claim. This goes to our First Amendment claim. I don't recall reading anywhere in there a statement to Judge Burgess, this goes to our retaliation claim. So there is a question as to whether the plaintiff fully and fairly informed Judge Burgess that this was an issue that went to retaliation. The plaintiff's theory on retaliation, she had multiple theories that were raised before the jury. And the theory in this instance involved the memos that she and Ms. Sawyers were exchanging between each other. And with regard to that prong of her retaliation claim, there probably ---- there was maybe some minimal relevance that these witnesses could have granted to her case. But these witnesses, there's no indication in the record that she had personal knowledge of any of these events that these witnesses were going to talk about. And these witnesses were going to talk about incidents that happened 5 years earlier at a different agency that Ms. Sawyers apparently worked at very briefly in conjunction with these witnesses. So the relevance was very marginal, if any at all. And the potential for unfair prejudice was very high because you would have essentially a trial, a mini-trial within a trial, spinning off and taking up the Court's time. You would have to have witnesses talk about what happened 5 years ago. And there would be ---- and the defense would have been able to, obviously, entitled to bring forth witnesses as to the defense version of what happened. And that would have been very unproductive, would have been a waste of time, and Judge Burgess was within his discretion to rule that, no, this, what's before us is what Ms. Sawyers and Ms. Rodriguez, what was going on between those two, not what happened 5 years ago. So that was well within Judge Burgess' discretion to deny the plaintiff's request to have those witnesses testify. And finally, with regard to the jury instructions, the instructions that were given were appropriate in this case. The plaintiff argues that number 28, his proposed number 28, should have been given. In reading over that proposal, it's clear that it gives a long list of examples of adverse employment actions, and these ---- this long list itself appears to be a comment on the evidence. And for that reason alone, it was appropriate for the Court to not give plaintiff's proposed instruction number 28. And with regard to number 29, the proposed instruction number 29, the Court did give a definition of protected activity that was legally correct. It allowed the plaintiff to argue her theory of the case. And we still have no explanation from the plaintiff as to why that instruction is deficient in any way. This case was a trial. The Court ---- Kennedy, I think we have it in mind. The jury heard Ms. Rodriguez's testimony. You need to prolong. Okay. Thank you. We would ask that the Court deny the appeal. All right. Thank you. Just briefly, just a couple of comments here. First of all, regarding the fact that the Ms. Rodriguez counsel for Pierce County indicates Ms. Rodriguez did have the discovery at the time of pre-trial conference. That is, given the amount of material that she had, and given the fact it was only given a month before trial, I just, frankly, I find that inexcusable, and it put a difficult burden on trial counsel in this case, trying to get ready for trial, then deposing a new witness. So I think at that point, even though judges do have tight schedules, it would have been appropriate to have given a continuance. In fact, there should have been a, I mean, counsel could have actually asked for sanctions. Could have, didn't. Didn't, but. Could have moved earlier, asked for sanctions. Well, yes, yes. But given the situation there, I think given the fact that the material had been given at that point, the fact that he wasn't receiving the material a month beforehand, it's hypocritical to be talking in those terms, because the county was extremely dilatory in doing that. The other thing I would point out is, regarding the two witnesses. I understand. I don't mean to belittle the argument in any way, but the trial judge, that's the function of the trial judge. The trial judge is really in the best position to assess the equities, and knows the case, and knows the history. It's very difficult for an appellate panel to sit up here and second guess a trial judge's exercise of discretion on evidentiary matters and discovery matters and pretrial matters. We just can't. That's not our function. Well, I know there are. It's a high hurdle. It's a high hurdle to jump. I understand that. It's just that in this case, it was an extraordinary situation. And not to fault Judge Burgess, an excellent judge, but I think he was in a tough position because he was substituting at that point as well. I think my client, I believe, was prejudiced by the circumstances. All right. Well, we have your arguments in the briefs, and today we'll submit the case and think about it. Okay. And I'll join counsel also in apologizing for the criticism as well taken. Well, we appreciate your both acknowledging it. It was offered as constructive criticism. It does make our job easier if the rules are followed. Thank you. Thank you both. The case argued is submitted, and we will be in recess. I understand we have some visitors from the University of Washington. If you'd like to hang around for a little bit, we'll be happy to chat for a few minutes.
judges: Fisher, Gould, Ikuta